UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:16-CV-00101-GNS

OHIO FARMERS INSURANCE COMPANY                               PLAINTIFF

v.

CHARLIE'S ELECTRIC SERVICE, INC.;
CHARLES McCUTCHEN; and
KATHERINE McCUTCHEN                                            DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Summary Judgment (DN 9). The Court previously directed Defendants to the respond to the motion by April 3, 2017, but Defendants failed to do so. (Order, DN 13). For the reasons outlined below, the motion is **GRANTED**.

### I. STATEMENT OF FACTS AND CLAIMS

Plaintiff Ohio Farmers Insurance Company ("OFIC") is an Ohio corporation authorized to do business in the Commonwealth of Kentucky. (Compl. ¶ 1, DN 1). On April 3, 2013, Defendants Charlie's Electric Service, Inc. ("Charlie's Electric"), Charles McCutchen, and Katherine McCutchen entered into an indemnity agreement ("Agreement") with OFIC. (Compl. ¶ 9; Agreement of Indemnity 8-9, DN 1-2). Based on Defendants' execution of the Agreement, OFIC issued a Subcontractor Performance Bond No. 6087987 ("Performance Bond") and a Subcontractor Labor and Material Payment Bond No. 6087987 ("Payment "Bond") for electrical work that Charlie's Electric had contracted to perform for Yager Materials, LLC ("Yager

Materials") in the Commonwealth of Kentucky ("Bonded Subcontract"). (Compl. Ex. 2, DN 1-3; Smith Aff. ¶ 3, DN 10; Smith Aff. Ex. 2, DN 10-2).

In a letter dated May 22, 2015, Yager Materials notified OFIC and Charlie's Electric that Yager Materials was contemplating declaring Charlie's Electric in default of the Bonded Subcontract due to its failure to timely complete the work on the project. (Smith Aff. ¶ 4; Smith Aff. Ex. 3, DN 10-3). Yager Materials requested a meeting with OFIC and Charlie's Electric to discuss the status of the project, which was held on May 28, 2015. (Smith Aff. ¶ 4; Smith Aff. Ex. 3). On or about June 15, 2015, Charlie's Electric notified OFIC that it could no longer perform the work under the Bonded Subcontract and had abandoned the project. (Smith Aff. ¶ 4). By letter dated June 15, 2015, Yager Materials declared Charlie's Electric in default and demanded that OFIC assume responsibility for performance and completion of work under the Bonded Subcontract, including assuming responsibility for payment of the work. (Smith Aff. ¶ 4; Smith Aff. Ex. 4, DN 10-4).

On June 16, 2015, OFIC sent a letter to Defendants notifying them that they had breached the Agreement, demanding indemnification, and requesting that they deposit the sum of $150,000 as collateral security. (Compl. ¶ 20; Compl. Ex. 5, DN 1-6). Defendants did not respond to the letter, and they did not deposit any collateral. (Compl. ¶ 21; Smith Aff. ¶ 4).

As part of its investigation, OFIC received a bid in the amount of $397,204.25 to remediate and complete the work under the Bonded Subcontract. (Smith Aff. ¶ 4). OFIC then proceeded to reach an agreement with Yager Materials under which OFIC would pay Yager Materials the sum of $397,000 to be held in trust to apply to the completion of the work required by the Bonded Subcontract. (Smith Aff. ¶ 4; Smith Aff. Ex. 5, DN 10-5). After the work was completed and Yager Material paid the replacement subcontractor the sum of $201,650.19 for

the work, OFIC was able to recoup $195,349.81 of the original $397,000 it paid under the Performance Bond. (Smith Aff. ¶ 4). After Rexel, Inc., a supplier of Charlie's Electric, made a claim on the Payment Bond, OFIC settled the claim by paying the sum of $22,000 from the Payment Bond. (Smith Aff. ¶ 5; Smith Aff. Ex. 6, DN 10-6). OFIC also maintains that it has additional losses or expenses totaling $9,363. (Smith Aff. ¶ 6).

OFIC filed this action against Defendants seeking specific performance of the Agreement and breach of contract. (Compl. ¶¶ 29-43). In addition, OFIC alleged that it is entitled to equitable indemnity, reimbursement, and exoneration against Charlie's Electric, and that it is entitled to relief under the equitable remedy of *quia timet*. (Compl. ¶¶ 44-48). As noted above, Defendants have not responded to OFIC's motion.

## II.     JURISDICTION

This Court has subject-matter jurisdiction of this matter based upon diversity of citizenship. *See* 28 U.S.C. § 1332(a)(1).

## III.     STANDARD OF REVIEW

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of stating the basis for the motion and identifying evidence in the record that demonstrates an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies its burden, the non-moving party must then produce specific evidence proving the existence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the non-moving party must present specific facts proving that a genuine factual issue exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

In seeking summary judgment, OFIC argues: (i) the Agreement is valid and enforceable; (ii) Charlie's Electric and the McCutchens are jointly and severally obligated to indemnify OFIC; and (iii) OFIC is entitled to recover damages in the amount of $233,013.19 against Defendants. (Pl.'s Mem. Supp. Mot. Summ. J. 12-16, DN 9-1). The Court must consider OFIC's motion without the benefit of Defendants' response, and a non-moving party's failure to file an opposing memorandum may be sufficient grounds for granting the requested relief. *See* LR 7.1(c)(1). Nevertheless, in the interests of justice, this Court will review and address the merits of OFIC's motion.

"Under Kentucky law, in order to recover in any action based on breach of a contract, a plaintiff must show the existence and the breach of a contractually imposed duty." *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001) (citing *Strong v. Louisville & Nashville R. Co.*, 43 S.W.2d 11, 13 (Ky. 1931)). "The elements of a breach of contract are: (1) the existence of a valid contract; (2) breach of the contract; and (3) damages or loss to plaintiff."

*Sudamax Industria e Comercio de Cigarros, Ltda v. Buttes & Ashes, Inc.*, 516 F. Supp. 2d 841, 8445 (W.D. Ky. 2007).

The Court must first determine whether there was a valid contract between the parties. This Court has explained the requirements of a valid contract under Kentucky law are as follows:

> "An enforceable contract must contain definite and certain terms setting forth promises of performance to be rendered by each party." While every possible term need not be defined, the agreement must set forth the "essential terms" of the deal. "Mutuality of obligations is an essential element of a contract, and if one party is not bound, neither is bound."

*C.A.F. & Assocs., LLC v. Portage, LLC*, 913 F. Supp. 2d 333, 343 (W.D. Ky. 2012) (internal citations omitted) (citation omitted). In this case, all parties executed the Agreement under which Defendants—as the Indemnitors—paid a premium to OFIC—the Surety—in exchange for Defendants agreeing to do the following:

> The Indemnitors shall exonerate and indemnify the Surety from and against any and all liability for losses and/or expenses of whatsoever kind (including, but not limited to, interest, court costs, and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain: (1) by reason of having executed or procured the execution of the Bonds; (2) by reason of the failure of the Indemnitors to perform or comply with the covenants and conditions of this Agreement; or (3) in enforcing any of the covenants and conditions of this Agreement. Whenever liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor, the Surety may demand, and the Indemnitors shall deposit with the Surety, cash or other collateral to secure the obligations of this Agreement, in kind and amount satisfactory to the Surety in its sole discretion. In the event of any payment by the Surety, the Indemnitors further agree that, in any accounting between the Surety and the Indemnitors, the Surety shall be entitled to charge for any disbursements made by it regarding the matters herein contemplated under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety. The Surety shall have every right and remedy which a personal surety without compensation would have, including the right to secure its discharge on any Bond.

(Agreement of Indemnity, 1, DN 1-2). Based on a review of the Agreement, the Court concludes that it contains the essential terms of the agreement between the parties, and that there is a mutuality of obligations requiring performance by OFIC and Defendants if Charlie's Electric failed to perform work for Yager Materials. Accordingly, the Agreement is valid under Kentucky law.

OFIC also argues that summary judgment is warranted because Defendants breached their duty of indemnity. After Charlie's Electric failed to perform the work for Yager Materials, OFIC fulfilled its obligation as surety by taking possession of and arranging for the completion of the work under the Bonded Subcontract. As discussed above, OFIC secured a replacement subcontractor, and Defendants have failed to indemnify OFIC as required by the Agreement. Thus, OFIC has presented undisputed evidence that Defendants breached their obligations under the Agreement.

OFIC has also provided sufficient evidence of its damages arising from Defendants' breach of the Agreement and Charlie's Electric's failure to perform the work under the Bonded Subcontract. As this Court has explained regarding the recovery of damages for breach of contract under Kentucky law:

> Recovery on a breach of contract may be for general damages or special damages. General damages arise naturally from the breach itself or it can be supposed that the parties had these damages in mind as a probable result of breach. Special damages, on the other hand, arise from special circumstances outside the "usual course of things" and are only recoverable when the party to be held liable had notice of the special circumstances involved.

*Tex. Capital Bank, N.A. v. First Am. Title Ins. Co.*, 822 F. Supp. 2d 678, 685 (W.D. Ky. 2011) (citing *U.S. Bond & Mortg. Corp. v. Berry*, 61 S.W.2d 293, 297 (Ky. 1933)). OFIC has established that it incurred damages from Defendants' breach, as follows:

| | |
|---|---:|
| Work Completed by Replacement Subcontractor | $201,650.19 |
| Satisfaction of Claim by Rexel, Inc. | $22,000.00 |
| Additional Losses/Expenses | <u>$9,363.00</u> |
| **TOTAL LOSSES** | **$233,013.19** |

(Smith Aff. ¶¶ 4-7; Smith Aff. Ex. 6). Because these claimed damages are uncontested by Defendants, it appears that there is no genuine issue of fact regarding OFIC's losses caused by Defendants' breach of contract.

For the reasons, OFIC is entitled to summary judgment on is breach of contract claim. The motion will be granted.[1]

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment (DN 9) is **GRANTED**, and judgment is entered against Defendants Charlie's Electric Service, Inc. ("Charlie's Electric"), Charles McCutchen, and Katherine McCutchen jointly and severally in the amount of $233,013.19. Costs are also taxed against Defendants, for which execution may issue.

cc: counsel of record
 Charles McCutchen, *pro se*
 Katherine McCutchen, *pro se*
 Charlie's Electric Service, Inc.

---

[1] OFIC did not characterize its motion as being a motion for partial summary judgment, but the motion only addresses its claim for breach of contract. Accordingly, the Court will consider the remaining claims abandoned.